998 So.2d 864 (2008)
STATE of Louisiana, Appellee
v.
Andrew Kelly PLATT, Appellant.
No. 43,708-KA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*867 Jane Beebe, for Appellant.
Paul J. Carmouche, District Attorney, John Ford McWilliams, Jr., Jason Brown, Dhu Thompson, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and PEATROSS, JJ.
GASKINS, J.
The defendant, Andrew Kelly Platt, was convicted by a jury of armed robbery with a firearm. He was adjudicated a second felony offender and was sentenced to serve 75 years at hard labor, without benefit of probation or suspension of sentence. The defendant appeals his conviction and sentence. For the following reasons, we affirm the conviction and amend and affirm the sentence.

FACTS
The defendant's girlfriend, Rachel Stokes, was employed at the Burger King restaurant on Line Avenue in Shreveport. The defendant, Ms. Stokes, and her brother, Darius Stokes, came up with a plan to rob the restaurant. On the evening of May 31, 2006, Ms. Stokes was working at Burger King with Cedric McClendon, the assistant manager, and Sylvester Hinkle, the grill man. The lobby doors to the restaurant were supposed to be locked at 9:00 p.m. while the group cleaned up and prepared to close at midnight. Ms. Stokes left a door to the restaurant unlocked. The defendant, armed with a shotgun, and Mr. Stokes, armed with a handgun, entered the restaurant. They were dressed *868 in black, had bandanas tied around their faces, and wore sunglasses and gloves to avoid being identified. The defendant and Mr. Stokes ordered Ms. Stokes and Mr. Hinkle to go to the break room. Mr. McClendon was held at gunpoint and ordered to open the safe. The defendant and Mr. Stokes took $800 to $1,000 from the safe and fled the scene.
The defendant bragged to two of his cousins that he had robbed the Burger King. One of the cousins contacted police with the information and an arrest warrant was issued for the defendant. The defendant was arrested along with Ms. Stokes and Mr. Stokes.
During police questioning, Ms. Stokes confessed to the robbery. The defendant was being questioned about this offense and another robbery at Herby-K's restaurant that resulted in the death of the proprietor. When the defendant was told that Ms. Stokes had confessed to the Burger King robbery, he confessed also. The defendant was charged with armed robbery with a firearm, violations of La. R.S. 14:64 and 14:64.3.
The defendant later recanted, claiming that he thought if he confessed to the Burger King robbery, the police would release Ms. Stokes and she could return home to her children. He asserted that he did not commit the present offense. The defendant filed a motion to suppress his statements, arguing that his confession was not freely and voluntarily made. He contended that the statements were made while he was in an "intoxicated and stressful" state. He claimed that his statements were the result of fear, duress, and promises made by police officers. The trial court denied the motion to suppress.
While in jail awaiting trial, the defendant's cellmate was Raymond Smith. Mr. Smith approached the police and stated that he had information about the defendant. While in jail together, the defendant wrote two letters to a female named Shantrell and another to a male known as "Terrio." In these letters, he sought to establish an alibi for the night of the Burger King robbery. He instructed Shantrell to tell the police that they were together the entire evening the robbery occurred. Rather than mail the letters, it was decided that Mr. Smith would give the letters to his wife to surreptitiously take the letters out of the jail and deliver them to the intended recipients. Instead, Mr. Smith turned the letters over to the police and they were used against the defendant at trial.
The defendant was tried by a jury and convicted as charged. He was sentenced to serve 70 years at hard labor for the armed robbery and five years for the use of a firearm, with the sentences to be served consecutively without benefit of parole, probation, or suspension of sentence. The defendant was then charged as a second felony offender. The defendant pled guilty, admitting that he had previously been convicted of possession of marijuana, second offense. The prior sentence was vacated and the defendant was ordered to serve 75 years at hard labor without benefit of probation or suspension of sentence. The defendant has appealed his conviction and sentence.

MOTION TO SUPPRESS
The defendant claims that the trial court erred when it denied his motion to suppress his confession and found his statement to be free and voluntary. This argument is without merit.

Legal Principles
Before the state may introduce a confession into evidence, it must demonstrate that the statement was free and voluntary and not the product of fear, duress, *869 intimidation, menace, threats, inducements or promises. La. R.S. 15:451; La. C. Cr. P. art. 703(D), State v. Blank, XXXX-XXXX (La.4/11/07), 955 So.2d 90, cert. denied, ___ U.S. ___, 128 S.Ct. 494, 169 L.Ed.2d 346; State v. Robertson, 40,626 (La.App. 2d Cir.4/12/06), 927 So.2d 629, writ denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1272; State v. Roddy, 33,112 (La. App. 2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288.
If a statement is a product of custodial interrogation, the state additionally must show that the person was advised before questioning of his right to remain silent; that any statement he makes may be used against him; and that he has a right to counsel, either retained or appointed. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Blank, supra; State v. Robertson, supra. When claims of police misconduct are raised, the state must specifically rebut the allegations. A trial court's finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not supported by the evidence. State v. Blank, supra.
Credibility determinations lie within the sound discretion of the trial court and its rulings will not be disturbed unless clearly contrary to the evidence. When deciding whether a statement is knowing and voluntary, a court considers the totality of the circumstances under which it is made, and any inducement is merely one factor in the analysis. State v. Blank, supra. Promises of immunity from prosecution, clemency, or leniency, inducements and implied promises will void a defendant's confession. However, a mild exhortation to tell the truth, or a remark that, if the defendant cooperates, the officer will "do what he can" or "things will go easier," will not negate the voluntary nature of the confession. State v. English, 582 So.2d 1358 (La.App. 2d Cir.1991), writ denied, 584 So.2d 1172 (La.1991).
Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Robertson, supra; State v. Turner, 37,162 (La.App. 2d Cir. 10/29/03), 859 So.2d 911, writ denied, XXXX-XXXX (La.3/26/04), 871 So.2d 347.
Intoxication may render a confession involuntary if it negates a defendant's comprehension and renders him unconscious of the consequences of what he is saying; whether intoxication exists and to a degree sufficient to vitiate voluntariness are questions of fact. However, the mere fact of drug or alcohol intoxication is insufficient, standing alone, to render a confession involuntary. State v. Robertson, supra.

Discussion
In his motion to suppress his confession, the defendant claimed that the statement was not free and voluntary because of his intoxicated and stressful state at the time the statements were made. He argued that his statements were made out of fear and duress and that he expected the fulfillment of promises made by the detectives in return for his statements. In his brief, the defendant claims that the police were "vicious" in questioning him and that he was questioned from 1:30 a.m. until 6:30 a.m. He also argues that his story contained inconsistencies with the facts of the offense which should have alerted the detectives that he was not telling the truth about committing the robbery.
At the hearing on the motion to suppress, the defendant testified that he was placed under arrest for the Burger King *870 robbery and that he was given his Miranda rights. A signed waiver of rights form bearing the defendant's signature was introduced into evidence. The defendant testified that he was familiar with his Miranda rights from having been arrested previously on other charges. The defendant stated that he talked to two detectives and then talked to Detective Rod Johnson. The defendant claimed that he told his cousin that he planned the Burger King robbery and the Herby-K robbery, but that he did not actually commit the offenses. The defendant stated that Detective Johnson later told him that Ms. Stokes had confessed to the Burger King robbery. The defendant then confessed as well. However, at the hearing, the defendant claimed that he did not actually commit the offense, but his confession was an attempt to get Ms. Stokes released.
In his confession, the defendant gave a detailed account of the Burger King robbery. He stated that he entered the restaurant with a shotgun, ordered money taken out of a safe, and took approximately $1,000. He also was aware of the employees that were in Burger King when the offense occurred.
Detective Johnson testified that the defendant was given his Miranda rights and signed a waiver of rights form. The defendant confessed to committing the Burger King robbery. Detective Johnson testified that the defendant did not appear to be under the influence of any substances, was not coerced, and no promises or inducements were employed to gain the confession.
The trial court found that the police questioning did not create a coercive environment and that the defendant's testimony to the contrary was full of internal inconsistencies. The trial court found that the defendant's statements to police were made freely and voluntarily and were admissible against him.
Based upon this record, there is no showing that the defendant was coerced to confess. There is nothing in the record to indicate that he was intoxicated at the time of the confession or that fear or duress were used to induce the confession. The record also does not show that any promises or improper inducements were employed to obtain the confession. The taped confession was introduced into evidence and reviewed by this court. The defendant was quite loquacious, talking freely without many questions being asked by the officers. The defendant failed to demonstrate that the officers were "vicious" in questioning him, nor does the taped confession support the defendant's claim.
The length of the interrogation in this case does not operate to vitiate the consent. In State v. Blank, supra, Louisiana Supreme Court explored an argument that a confession was rendered involuntary after a lengthy interrogation. In Blank, the defendant was questioned for approximately 12 hours, but he was only in police custody during the last six hours. The supreme court noted that in Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), the United States Supreme Court found that 36 hours of virtually continuous interrogation was "inherently coercive." However in Blank, the Louisiana Supreme Court noted that in most state cases, confessions obtained after quite lengthy interrogations have been held to be voluntary and hence admissible. In this matter, the defendant was questioned for approximately five hours. The length of the interrogation in this case did not render the confession involuntary.
The defendant also contends in his brief that the factual inconsistencies in his confession concerning whether the robbers *871 entered through a front door or a side door and whether there were two or three robbers should have alerted detectives to the fact that the defendant did not actually commit the robbery. These inconsistencies were very minor. The truthfulness of a confession is primarily an issue for the jury to decide when considering the sufficiency of the evidence rather than a critical factor for the judge to consider when deciding whether the statement was voluntary. State v. Blank, supra.
Under the facts of this case, the trial court did not err in finding that the defendant's statements were freely and voluntarily made and were properly admitted into evidence.

MOTIONS FOR MISTRIAL AND NEW TRIAL
The defendant raises two assignments of error arising from the use against him of his letters written in jail seeking to enlist aid in establishing an alibi. He argues that the trial court erred in denying his motion for mistrial based upon the defense counsel's inability to present a defense and confront Mr. Smith, the defendant's cellmate, due to a perceived conflict of interest. In his pro se brief, the defendant raises essentially the same argument contending that the trial court erred in failing to grant the motions for mistrial and new trial where the defense counsel was operating under a conflict of interest which denied the defendant the right to put on a defense and rendered his counsel's assistance ineffective. He argues that Mr. Smith was acting as an agent of the state and, by failing to identify himself as such, deprived the defendant of the rights and privileges secured by the constitution and laws of the United States such as the right to remain silent, the right against self-incrimination, and the right to counsel while being question. These arguments are without merit.

Legal Principles
Mistrial is a drastic remedy which is warranted only when substantial prejudice would otherwise result to the accused. The trial court has the discretion to determine whether a fair trial is impossible or whether a jury admonition is adequate to assure a fair trial when alleged misconduct does not fit into the provisions for a mandatory mistrial, and the ruling will not be disturbed absent an abuse of discretion. State v. Clem, 33,686 (La.App. 2d Cir. 11/1/00), 779 So.2d 763, writ denied, XXXX-XXXX (La.10/5/01), 798 So.2d 964.
La. C. Cr. P. art. 775, regarding mistrial, specifies in pertinent part:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
....
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
....
(5) It is physically impossible to proceed with the trial in conformity with law;
....
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
La. C. Cr. P. art. 851 governs the motion for new trial and specifies in pertinent part:

*872 The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
....
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
La. C. Cr. P. art. 921 defines harmless error:
A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.
Even when error is committed, if an appellate court finds beyond a reasonable doubt that the error was harmless in light of the total circumstances, the defendant's conviction will not be overturned. A reversal and a new trial is required only if there is a reasonable possibility that the error complained of might have contributed to the conviction. State v. Hocum, 456 So.2d 602 (La. 1984). The defendant must show prejudice before his conviction will be reversed. State v. Sweeney, 443 So.2d 522 (La.1983). See also State v. Romero, 552 So.2d 45 (La.App. 3d Cir.1989), writ denied, 559 So.2d 137 (La. 1990).

Discussion
When the state sought to use the letters, discussed above, at trial, the defendant's attorney informed the court that he had a conflict of interest in that he represented Mr. Smith's wife in another criminal proceeding and could not effectively question Mr. Smith. Based on these facts, the defendant moved for a mistrial. In order to avoid the conflict, the state chose not to call Mr. Smith as a witness. Instead, the prosecution questioned Detective Johnson regarding the facts surrounding the acquisition of the letters in the jail. When the defendant argued that this violated his right of confrontation, the court pointed out that the defendant could call Mr. Smith to testify if he chose to do so. The trial court denied the motion for mistrial. Later in the proceedings, the defendant filed a motion for new trial, raising this same issue. The trial court denied the motion for new trial.
Based upon the facts of this case, we find that the trial court did not err in denying the motions for mistrial and new trial. The letters were relevant and admissible as admissions of the defendant. Detective Johnson was a proper party to introduce the defendant's letters. The identity of the writer was not an issue as the letters indicated that the defendant was the author, the defendant's fingerprints were all over the letters, and the defendant himself admitted that he wrote them.
According to Detective Johnson, Raymond Smith contacted police to tell them what the defendant was saying about the Burger King and Herby K burglaries. Detective Johnson told Mr. Smith that he could only listen to what he had to say, that Mr. Smith could not become an agent of the police, that Mr. Smith could not ask any questions for him or instigate the conversation. The next time Detective Johnson *873 talked to Mr. Smith, it was to ask Mr. Smith questions so that he could prepare a search warrant for the letters, which already were in police custody.
The defendant contends that Mr. Smith was an agent of the state. The defendant testified that he had been in jail for approximately one year for the present offense and Mr. Smith was his cellmate for the last several months. The defendant stated that he asked Mr. Smith what he could do to be released from jail. He claimed that Mr. Smith suggested that the defendant come up with an alibi, and at a later time, that he contact the "alibi witnesses" by letter. The defendant testified at trial regarding the alibi letters. He admitted freely talking to Mr. Smith about the robbery. He admitted writing the letters in an attempt to establish a false alibi. He acknowledged trying to get the letters out of the jail through Mr. Smith's wife. Even if the defendant's claims that Mr. Smith had the idea that he needed an alibi and that the defendant communicate by letter are true, these facts would not make Mr. Smith an agent of the police. The defendant did not testify that Mr. Smith helped or urged him to write the specific information contained in the letters.
The defense counsel claims that he had a conflict of interest in calling Mr. Smith to testify. However, it is important to note that the defendant's counsel represented Mrs. Smith, not Mr. Smith. In reality, defense counsel could not afford to call Mr. Smith because the defendant, by his own admission, had frequently discussed the burglary with him.
We do not find that any constitutional rights of the defendant were violated in failing to grant the motions for mistrial and new trial. However, even if the trial court had erred in its decisions in this regard, the error would be harmless due to the overwhelming evidence against him.

EXCESSIVE SENTENCE
The defendant argues that the trial court erred in imposing an excessive sentence. This argument is without merit.

Legal Principles
Although a written motion to reconsider is not filed by a defendant, a defendant who objects to the severity of his sentence at the sentencing may properly preserve the review of the excessiveness of the sentence on appeal. La. C. Cr. P. art. 881.1(B); State v. Singleton, 614 So.2d 1242 (La. 1993). In this case, the defendant objected orally, in court, to both the original sentence and the habitual offender sentence. Therefore, his claim of excessiveness of sentence is properly before us for review.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Lathan, 41,855 (La.App. 2d Cir.2/28/07), 953 So.2d 890, writ denied, XXXX-XXXX (La.3/28/08), 978 So.2d 297. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La. App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at *874 sentencing. State v. Shumaker, 41,547 (La.App. 2d Cir.12/13/06), 945 So.2d 277, writ denied, XXXX-XXXX (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/02), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Lingefelt, 38,038 (La.App. 2d Cir. 1/28/04), 865 So.2d 280, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1165.
The penalty for armed robbery is imprisonment at hard labor for not less than 10 years and not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64. When the dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed shall be served consecutively to the sentence imposed under the provisions of La. R.S. 14:64.3[1]

Discussion
At the original sentencing, the defendant stated that he was 25 years old with two children. The court specified that the defendant in this matter robbed the Burger King of $800 to $1,000 and tried to get someone to concoct an alibi for him. The court also noted the defendant's possible involvement in the Herby-K robbery/murder. The court stated that the defendant had a prior felony conviction of possession of marijuana, second offense, on May 16, 2006. The defendant's criminal record also showed juvenile offenses and misdemeanors in city court. The court sentenced the defendant to serve 70 years at hard labor without benefit of parole, probation, or suspension of sentence for the armed robbery and five years without benefit of parole, probation, or suspension of sentence for the use of a firearm. The defendant made an oral objection to the severity of the sentence.
The defendant was then charged as a habitual offender. He entered a plea of guilty, admitting that he was a second felony offender. The prior sentence was vacated and the defendant was sentenced to serve 75 years at hard labor to be imposed without benefit of probation or suspension of sentence, with credit for time served. Based upon the original sentencing considerations and the facts in the record, the trial court adequately set forth the reasons for the sentence.
The defendant argues that the trial court placed inappropriate emphasis on the defendant's possible involvement in the Herby-K robbery/murder. This argument is without merit. In selecting a proper sentence, a trial judge is not limited *875 to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Russell, 40,526 (La.App. 2d Cir.1/27/05), 920 So.2d 866, writ denied, XXXX-XXXX (La.9/29/06), 937 So.2d 851; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Estes, 42,093 (La.App. 2d Cir.5/9/07), 956 So.2d 779, writ denied, XXXX-XXXX (La.4/4/08), 978 So.2d 324.
However, we note several factors that make the defendant's sentence illegally lenient. The trial court imposed the 75-year sentence without benefit of probation or suspension of sentence. Although La. R.S. 15:529.1(G) states that any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence, the jurisprudence holds that additional restrictions, such as lack of parole eligibility, may be imposed, provided that those additional restrictions are provided in the underlying offense of conviction. See State v. Hunter, 33,066 (La.App. 2d Cir.9/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.4/19/02), 813 So.2d 424; State v. Shields, 614 So.2d 1279 (La.App. 2d Cir.1993), writ denied, 620 So.2d 874 (La.1993); State v. Richard, 550 So.2d 300 (La.App. 2d Cir.1989).
In this case, the underlying statutes for armed robbery, La. R.S. 14:64, and use of a firearm, La. R.S. 14:64.3, specify that the sentences are to be served without benefit of parole, probation, or suspension of sentence. Therefore, because the trial court failed to deny parole eligibility in this matter, the sentence was illegally lenient.
We also observe that the trial court did not add five years to the sentence for use of a firearm. Under La. R.S. 15:529.1, after adjudication as a second felony offender, if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. Further, in a situation such as the present case, where the defendant has been convicted of armed robbery with a firearm, the five-year sentence under La. R.S. 14:64.3 is to be added to the habitual offender sentence. State v. King, XXXX-XXXX (La.10/16/07), 969 So.2d 1228.
The defendant was informed by the trial court that, as a second felony offender, his sentencing range was 54½ to 203 years at hard labor without benefit of probation or suspension of sentence. Apparently, the trial court calculated the five years for the use of a firearm into these figures when informing the defendant of the sentencing range.
Considering the fact that the five years for use of a firearm was not to be served at hard labor, we are unclear whether the judge included the five years in the sentence since he did not specify that the five years was not to be served at hard labor. This court has held that when the five-year sentence under La. R.S. 14:64.3 is not included in the original sentence, the sentence is indeterminate, requiring a remand for resentencing. See State v. Birch, 41,979 (La.App. 2d Cir.5/9/07), 956 So.2d 793; State v. White, 42,725 (La.App. 2d Cir.10/24/07), 968 So.2d 901. However, in State v. Hall, 43,125 (La.App. 2d Cir.6/4/08), 986 So.2d 863, when sentencing *876 a defendant as a habitual offender for armed robbery with a firearm, the trial court failed to specify that an additional five years was to be served for the use of a firearm. The state did not object in the trial court and did not appeal or answer the appeal, but did point out in its brief that the sentence was illegally lenient. In that instance, this court found that, although La. C. Cr. P. art. 882 grants the appellate court the power to correct illegal sentences, courts have traditionally abstained from exercising this power when the defendant alone has appealed and the state has not sought independent review of the sentence.[2]
In this instance, we choose to correct the sentence to provide that the entire sentence is to be served without benefit of parole, probation, or suspension of sentence.

DOUBLE ENHANCEMENT
In his pro se brief, the defendant argues that the trial court erred in using his prior conviction for possession of marijuana, second offense, as the predicate felony offense for his habitual offender adjudication. The defendant contends that, because possession of marijuana, second offense, has already been enhanced, it cannot be used as the predicate felony offense for the habitual offender adjudication. This argument is without merit.

Legal Principles
Although not clearly expressed, the reasoning for the defendant's argument seems to draw its authority from State v. Sanders, 337 So.2d 1131 (La.1976), and State v. Firmin, 354 So.2d 1355 (La.1978), in which the Louisiana Supreme Court held that an adjudication for being a convicted felon in possession of a firearm could not be further enhanced under the habitual offender law. That is, a defendant convicted of being a felon in possession of a firearm could not then have that sentence vacated and a multiple offender sentence imposed based upon that adjudication and other prior felonies.
Recently, in State v. Baker, 2006-2175 (La.10/16/07), 970 So.2d 948, cert. denied, ___ U.S. ___, 129 S.Ct. 39, 172 L.Ed.2d 49 (2008), the supreme court overruled Sanders and Firmin. The court held that a sentence imposed under La. R.S. 14:95.1, the statute prohibiting possession of firearms by convicted felons, may be enhanced under the habitual offender law, as long as the prior felony conviction used as an element in the firearms conviction is not also used as a prior felony conviction in the habitual offender bill of information.

Discussion
The facts of the present case are distinguishable. Here the trial court did not seek to impose an additional penalty under the Habitual Offender Law for the offense of possession of marijuana, second offense. That offense was merely used as a predicate for the habitual offender charge to enhance the defendant's sentence arising out of the present conviction for armed robbery with a firearm. Further, the underlying offense for the conviction of possession of marijuana, second offense, is a misdemeanor and is, of course, not included as a predicate offense for the habitual offender adjudication. Under the facts presented, we see no reason for a prohibition against the use of the charge of *877 possession of marijuana, second offense, as a predicate felony in a habitual offender charge.

CONCLUSION
For the reasons stated above, we affirm the conviction and amend the sentence of the defendant, Andrew Kelly Platt, to provide that the sentence is to be served without benefit of parole, probation, or suspension of sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AS AMENDED, AFFIRMED.
NOTES
[1] La. R.S. 14:64.3 was amended by Acts 2006, No. 208, § 1, to provide that the five-year sentence is to be served at hard labor. The amendment was effective August 15, 2006. The present offense occurred on May 31, 2006. Therefore, the amendment does not apply to the present case.
[2] The third circuit has reached the opposite conclusion and has ruled that the failure to include the additional five-year sentence for use of a firearm in sentencing as a habitual offender after conviction of armed robbery with a firearm results in an indeterminate sentence and requires remand for resentencing. See State v. McGinnis, XXXX-XXXX (La. App. 3d Cir.4/30/08), 981 So.2d 881.