PITMAN, J.
| j Defendant Randy Presentine pled guilty to vehicular homicide, and the district court sentenced him to 25 years at hard labor, with the first 3 years to be served without benefits, and to pay a fine of $2,000. Defendant appeals, arguing that his sentence is excessive. For the following reasons, we affirm Defendant’s conviction and sentence.
FACTS
On March 3,2015, the state filed a bill of information charging Defendant with vehicular homicide in violation of La. R,S. 14:32.1. The bill of information alleged that, on or about January 31, 2015, Defendant killed seven-year-old D.H. while Defendant was engaged in the operation of a motor vehicle and had a blood alcohol level concentration of 0.10 percent or more.
On January 14, 2016, Defendant pled guilty to vehicular homicide. In exchange for his guilty plea, the state agreed to dismiss all other charges in the matter and not to file a habitual offender bill. The state and defense did not agree to a sentence, and the district court ordered a presentence investigation (“PSI”) report.
A sentencing hearing was held on May 11, 2016. Corporal Dianna Sanchez of the Shreveport Police Department testified that, at 2:14 p.m. on January 31, 2015, she was dispatched to investigate a car crash. She noted that she arrived at the scene approximately 40 minutes to an hour after the crash occurred and observed a vehicle on its rooftop in the intersection of Youree Drive and Herndon Avenue. She stated that she was aware that there was a victim suffering from serious, potentially life-threatening, injuries, and that, in such a case, the police department performs a |2mandatory blood draw from the driver of the vehicle. After speaking with several witnesses of the crash, it was determined that Defendant was the driver of the vehicle. Defendant’s blood was drawn, and a toxicology report stated that his blood alcohol content was 0.120.
Cpl. Sanchez testified that she interviewed Defendant after he waived his Miranda rights, and he stated that he was driving his wife to work when the crash occurred. He admitted that he purchased a pint of Jack Daniels that morning. She also testified that she spoke to Defendant’s *592 friend who told her that Defendant was at his house between 12:00 p.m. and 1:00 p.m. on the day of the crash and that he witnessed Defendant drink a mixture of Paul Masson and Sprite. She stated that another police officer searched the hotel room where Defendant and his wife were staying and recovered an empty pint of Jack Daniels. The crash chip from Defendant’s vehicle was recovered, and it indicated that five seconds before the airbags deployed the vehicle was traveling 60 miles per hour.
Cpl. Sanchez stated that she set up an interview at the Gingerbread House for D.H.’s cousin, who witnessed the erash, and learned that D.H. and her cousin were standing with their bicycles near the intersection of Youree Drive and Herndon Avenue when her cousin saw Defendant’s car coming toward them. He was able to get out of the way of the vehicle, but D.H. was not.
Cpl. Sanchez also testified about crime scene photographs, including one that showed the handlebars of a child’s bicycle underneath the vehicle and a pool of blood underneath the bicycle from where D.H. was pulled out. She stated that D.H. passed away on February 2, 2015, and that an autopsy | ^report determined her cause of death was blunt force injuries from being struck as a pedestrian by a motor vehicle.
Cpl. Sanchez further testified that she requested a report on Defendant’s criminal history and learned that he had numerous prior arrests, including possession of a Schedule II, crack cocaine, in 1995; driving while intoxicated (“DWI”) in 1996; DWI and driving with a suspended license in 1997; a stop sign violation in 2005; domestic abuse battery in 2007; disturbing the peace in 2007; and a drug paraphernalia conviction in 2008.
Bradley K. Dean, a fire engineer and paramedic for the Shreveport Fire Department, testified that, on January 31, 2015, he was dispatched to an accident at Youree Drive and Herndon Avenue at 2:13 p.m. and arrived on the scene at 2:15 p.m. He observed a vehicle resting on its roof and extensive debris. He found D.H. on the ground and noted that she was completely unresponsive and had considerable amount of hemorrhaging in her mouth; agonal res-pirations, i.e., gasping to take a breath; and extensive bleeding from her right leg. When he and his partners rolled her onto her side to clear her airway, a pinkish substance came out of her ear, which indicated that she had a possible skull fracture. They put D.H. on a spine board and transported her to the ambulance to take her to the hospital.
Tequila Henderson testified that she is the mother of D.H. and read a statement she had prepared about the loss of her daughter. She noted that the death of D.H. caused both mental and physical pain for her family. D.H.’s aunt submitted a letter for the district court’s review.
James Stevenson, Defendant’s brother-in-law, stated that Defendant expressed remorse and was very apologetic about the accident. He asked the district court to “temper justice with mercy” in that Defendant’s intentions [4would never be to harm anyone. Elizabeth Bryant, Defendant’s sister, also asked for the court’s mercy, stating that Defendant had expressed remorse and is very saddened. Annie Presentine, Defendant’s wife, stated that he expresses remorse every day, and she asked that the district court have mercy on Defendant because “he’s very needed around the house” and is a good person. She also noted that they have an adult child with special needs. Defendant apologized to D.H.’s family.
After analyzing the La. C. Cr. P. art. 894.1 factors, the district court ordered *593 Defendant to pay a fíne of $2,000 through inmate banking and sentenced him to 25 years at hard labor, with the first 3 years to be served without the benefit of probation, parole or suspension of sentence. The district court stated that this sentence was to run concurrently with any other sentence and noted credit for time served.
On May 18, 2016, Defendant filed a motion to reconsider sentence. He requested that the district court consider that he had no DWI convictions within the last ten years and that he expressed remorse for his actions.
On May 19, 2016, the district court signed a ruling denying Defendant’s motion to reconsider sentence, noting that, at the sentencing hearing, it provided detailed reasons for the sentence imposed and carefully and thoroughly considered and weighed the aggravating and mitigating circumstances of the case. The district court stated that it remained of the opinion that the sentence was reasonable in all aspects.
Defendant appeals.
J^DISCUSSION

Excessive Sentence

Defendant argues that the sentence imposed by the district court is unconstitutionally harsh and excessive in light of the facts and circumstances of the ease and his personal history. He states that he is 47 years old, has only one prior felony, has not had a felony or DWI conviction in nearly 20 years, did not flee the scene, pled guilty as charged, admitted his responsibility, was truly remorseful and has a family, including a special needs daughter, who needs him at home. He notes that his 25-year sentence is near the maximum sentence of 30 years and contends that he is not the worst of offenders.
The state argues that the 25-year sentence is not constitutionally excessive and that it is well within the statutory limits for the offense committed. It notes Defendant’s extensive criminal history, which includes convictions for possession of cocaine, DWI and consistent and repeated violations for driving with a suspended license throughout the past 30 years. It states that the district court reviewed the PSI report and all of the discovery, heard testimony from the families of the victim and Defendant and considered the appropriate factors. It argues that D.H. lost her life as a direct result of Defendant’s decision to operate a vehicle while under the influence of alcohol and that his remorse does not excuse his actions.
When reviewing an excessive sentence claim, the appellate court uses a two-prong test. First, the record must demonstrate that the trial court complied with La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating and mitigating circumstance, but the record must reflect that it adequately considered the guidelines of La. C. Cr. P. art. 894.1. State v. Smith, 433 So.2d 688 (La. 1983). The trial court should consider the defendant’s personal history and prior criminal record, the seriousness of the offense, the likelihood that the defendant will commit another crime and the defendant’s potential for rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981). The trial court is not required to assign any particular weight to any specific matters at sentencing. State v. Quiambao, 36,587 (La.App. 2d Cir. 12/11/02), 833 So.2d 1103, writ denied, 03-0477 (La. 5/16/03), 843 So.2d 1130.
Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const, art. 1, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 *594 (La. 1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id.
A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. State v. Square, 433 So.2d 104 (La. 1983); State v. Black, 28,100 (La.App. 2d Cir. 2/28/96), 669 So.2d 667, writ denied, 96-0836 (La. 9/20/96), 679 So.2d 430. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, 03-3614 (La. 12/13/04), 893 So.2d 7; State v. Free, 46,894 (La.App. 2d Cir. 1/26/12), 86 So.3d 29.
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Hogan, 47,993 (La.App. 2d Cir. 4/10/13), 113 So.3d 1196, writ denied, 13-0977 (La. 11/8/13), 126 So.3d 445.
La. R.S. 14:32.1(B)[1] states in part: Whoever commits the crime of vehicular homicide shall be feed not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence.
In the case sub judice, the district court complied with the requirements of La. C. Cr. P. art, 894.1 and considered aggravating and mitigating factors prior to imposing Defendant’s sentence. It found that there is an undue risk that, during the period of a suspended sentence or probation, Defendant will commit another crime, noting his multiple convictions for driving with a suspended license. It also found that Defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution. It determined that a lesser sentence would deprecate the seriousness of Defendant’s crime, noting that Defendant, while thoroughly intoxicated, lost control of his vehicle while driving at 60 miles per hour, which caused the death of a child. It further noted that, although Defendant did not intend to injure D.H., his actions of drinking and then operating a motor vehicle “constitute a callous disregard for the safety of the men, women and children of this community.” It found that Defendant knowingly created a risk of Ldeath or great bodily harm to more than one person. It determined that the offense resulted in a significant permanent injury or significant economic loss to the victim and her family, noting that the loss of a seven-year-old child is the “most profound” injury. It found that Defendant used a dangerous weapon—a motor vehicle travelling at a fast rate of speed—to commit the offense. It also determined that the offense involved multiple victims, including D.H., everyone connected with D.H. and also Defendant’s own family. It noted that Defendant could not financially compensate D.H.’s family because he did not have liability insurance. In addition, it found that Defendant’s attempts to shift blame to his wife, first by identifying her as the driver and then stating that she distracted *595 him while he was driving, were morally reprehensible. It also took issue with the fact that, when speaking to investigators for purposes of the PSI report, Defendant disputed how much his intoxication contributed to the crash.
The district court then discussed the possible mitigating factors and noted that Defendant did not have a recent history of DWI. It also found that Defendant’s family would be aggrieved by his incarceration.[2] It stated that it would not impose the maximum sentence because Defendant pled guilty, which demonstrated his acceptance of responsibility and also spared the victim’s family the pain of reliving the event through a trial.
Defendant’s criminal history was also discussed by the district court. It noted Defendant’s history of cocaine abuse and DWI offenses in the 1990s. It emphasized that, from the early 1990s until as recently as 2014, | flDefendant had repeated instances of driving with a suspended license. His pattern of traffic-related violations demonstrates that it is not important to Defendant to be in compliance with the law or respectful of the safety of those around him.
Therefore, the district court adequately considered the facts of this case, the information in the PSI report and the applicable factors set forth in La. C. Cr. P. art. 894.1 when it sentenced Defendant to 25 years at hard labor, with the first 3 years to be served without the benefit of probation, parole or suspension of sentence.
Further, Defendant’s sentence, although near the statutory maximum, is not constitutionally excessive and is within the statutory range. After a morning of drinking alcohol, Defendant lost control of his vehicle, causing the vehicle to hit and kill a seven-year-old child who was waiting to cross the street on her bicycle. Considering the facts of this case and Defendant’s criminal history, the sentence imposed by the district court is not grossly out of proportion to the severity of the crime and does not shock the sense of justice. The district court did not abuse its discretion in imposing this sentence.
Accordingly, this assignment of error lacks merit.

Reconsider Sentence

Defendant, argues that the district court erred in denying his motion to reconsider sentence. The state argues that this assignment of error should be dismissed because it was not briefed on appeal.
All assignments of error and issues for review must be briefed. U.R.C.A. Rule 2-12.4(B)(4). The court may consider as abandoned any assignment of error or issue for reviéw which has not been briefed. Id. A hntnere statement of an assignment of error in a brief does not constitute briefing of the assignment. State v. Hight, 35,621 (La.App. 2d Cir. 3/1/02), 810 So.2d 1250, writ denied, 02-1181 (La. 11/22/02), 829 So.2d 1036. Defendant merely states this assignment of error and fails to provide any arguments in support of the assignment of error.
Accordingly, this assignment of error is deemed abandoned.
CONCLUSION
For the foregoing reasons, we affirm the conviction and sentence of Defendant Randy Presentine.
AFFIRMED.

. In addition, La. R.S. 14:32.1(B) states that the court shall require the offender to participate in a court-approved substance abuse program. In this case, the district court did not order Defendant to participate in such a program. Although this error renders Defendant's sentence illegally lenient, this court refrains from amending sentences or remanding for resentencing when the state does not object to the error. State v. Foster, 46,992 (La. App. 2d Cir. 2/29/12), 87 So.3d 220.

. The district court did note, however, that Defendant was not financially supporting his family at the time of the crash and stated that his wife was the primary breadwinner and that his children received federal assistance.