MOORE, J.
*1236 Following a jury trial, Tyrone Washington was convicted as charged of molestation of a juvenile. The trial court sentenced him to 60 years at hard labor, with the first 25 years to be served without the benefit of probation, parole or suspension of sentence. He now appeals his conviction and sentence. For the following reasons, we affirm.
FACTS
A few days after M.B. confided to her friend, Jazzmine Nunn, that Washington, M.B.'s former stepfather, had sexually abused her when he lived in their home, she saw his car parked outside her school. Afraid that Washington might be looking for her, M.B. called Jazzmine on her cell phone. As she told Jazzmine about the defendant's car parked at her school, she lost her connection due to a weak battery in her phone. Jazzmine panicked when the call was suddenly cut off and M.B. did not immediately call her back or answer when Jazzmine called her. Worried for M.B.'s safety, she called M.B.'s mother, S.K., and told her of the situation, including the sexual abuse.
When S.K. learned that her former husband had molested her daughter, she called the Shreveport police. Shreveport Police Cpl. Lonnie Haskins interviewed S.K. and M.B. that evening. At first, M.B. denied that Washington touched her inappropriately, just as she had done a few years earlier when S.K. became suspicious that something might be happening. M.B. then spoke on the phone with Jazzmine, who apparently persuaded M.B. to tell Cpl. Haskins about the incidents in which Washington performed sexual acts with her when he was living with the family.
On October 24, 2014, Washington was arrested. He made two statements to Shreveport Police Detective De'andre Belle. In his first statement, he denied any wrongdoing. However, in his second statement, he admitted to having sexual intercourse with M.B. four times when she was 11 years old and he was 28. Subsequently, he filed a motion to suppress the self-incriminating statement; the court denied this after a hearing.
Washington was charged by amended bill of information for molestation of a juvenile under the age of 13. A unanimous jury convicted him of the charge. He filed a motion for post-verdict judgment of acquittal arguing that the evidence adduced at trial was insufficient to convict him; this was also denied.
Following a hearing, the trial court sentenced Washington to serve 60 years at hard labor, with the first 25 years to be served without the benefit of parole, probation or suspension of sentence.[1]
The defendant filed a motion to reconsider sentence arguing that the trial court failed to consider the applicable mitigating factors when sentencing him to 60 years imprisonment. The motion was denied, and this appeal followed.
DISCUSSION
By his first assignment of error, Washington argues that the trial court erred when it admitted his incriminating statements into evidence. Those statements, he alleges, were the product of duress, inducements or promises; specifically, he cites Det. Belle's threats of a lengthy prison sentence, and his erroneous accusation that he had previously committed a sex crime and a kidnapping. The defendant argues that he suffered from post-traumatic *1237 stress disorder ("PTSD") at the time of his confession, and he was also under the influence of marijuana.
Additionally, although not raised as a specifically assigned error, Washington maintains that there was insufficient evidence to support his conviction. He argues that M.B. delayed reporting the molestation, and he testified at trial denying any inappropriate behavior with her.
The state maintains that Washington's statement to police confessing to the molestation was freely and voluntarily given, and the evidence against him was sufficient to support the conviction.
The Motion to Suppress
Detective Belle testified at the suppression hearing that he arrested Washington and advised him of his Miranda[2] rights, which he waived. Det. Belle said Washington did not appear to be under the influence of alcohol or narcotics, and he understood the questions asked of him. He testified that police did not make any promises to Washington; nor did they threaten him in any way to obtain his statement.
Washington's statement, which was divided into two recordings, was played during the motion to suppress hearing.[3] At the beginning of the first recording, he was advised of his Miranda rights,[4] which he waived, explaining that he wanted to talk about the allegations against him. He confirmed that he was previously married to S.K., and he watched (babysat) M.B. and A.B. when S.K. was at work.
Washington denied that he ever touched M.B. inappropriately. He said that there was a "lot of confusion" in the home. M.B. and A.B. competed for his affection, and would come into his room to get food or movies. When asked why M.B. would tell police that he had sex with her, Washington replied that M.B. was upset with him because he had caught her with a boy.
During the interview, Det. Belle accused Washington of having previously been investigated for a sexual offense, but he denied this, explaining that he was stationed in South Carolina at the time the alleged prior offense occurred. Detective Belle dropped the matter.[5] Det. Belle also asked Washington if he gave S.K. and M.B. a sexually transmitted disease, which he denied. This interview occurred after the defendant repeatedly denied any wrongdoing.
In the second recorded statement, Washington once again waived his Miranda rights. He admitted that he had sex with M.B., but claimed that she "forced herself on me." He said that the sexual encounters, four in all, took place when the family lived at the South Pointe Apartments in Shreveport. M.B. would come to his room wearing only a white T-shirt and underwear when he was changing clothes. Washington denied that he threatened M.B., but he admitted that he told her that their sexual relationship was "our little secret." He claimed that M.B. first initiated the sexual relationship by stopping him as he walked down the hallway. He *1238 said she pulled down his pants and performed oral sex on him.
Detective Belle testified that there was only about a one- or-two-minute break between Washington's first and second recorded statements. He explained that after he turned off the recording equipment, Washington began making incriminating remarks so he turned the recording equipment back on.
Following Det. Belle's testimony, the trial court denied the motion to suppress.
Trial Testimony
At trial, Cpl. Haskins testified that on October 14, 2014, he spoke with M.B. She initially denied being touched inappropriately by anyone. However, after M.B. received a phone call from Jazzmine, she confided to Cpl. Haskins that she had been sexually abused by Washington when she was 11 years old.
S.K. testified that she and Washington[6] began dating in 2006. They married on May 2, 2009, when M.B. was 11 years old, although the couple were already living together along with S.K.'s children, M.B., A.B., C.B. and J.B., at the South Pointe Apartments[7] in Shreveport, Louisiana. Because S.K. worked two jobs, Washington watched M.B. and A.B. while S.K. was at work. S.K. testified that she noticed M.B.'s behavior change after she married the defendant: her grades fell, and she ran away from home. Suspicious that something was going on between the defendant and M.B., she questioned them both, and both denied any inappropriate behavior. The couple separated in July of 2012 and divorced on December 11, 2013.
On October 14, 2014, S.K. received a phone call from Jazzmine Nunn, M.B.'s best friend. S.K. stated that after the call, she asked M.B. if Washington had ever touched her inappropriately, but M.B. did not respond. S.K. called police the same day to file a report.
M.B. was 18 years old[8] at the time of trial. She said that when she was 11 years old, Washington babysat her and her younger sister, A.B., at their apartment while their mother was at work. She said that even before her mother married him, and for some time afterward, Washington engaged in sexual acts with her, including touching her vagina and having vaginal intercourse with her. She did not report this to her mother because she was afraid Washington would hurt or even kill her and her family. M.B. testified that Washington said he would kill her and her family if she told anyone.
M.B. recalled one particular occasion when her sister, A.B., walked into the bedroom while Washington was touching her: he yelled at A.B. to get out of the room. A.B. and M.B.'s older sister, C.B., told their mother what A.B. had seen. However, when S.K. asked M.B. about the incident, M.B. lied and denied that anything had happened. She said she lied because she was afraid Washington would make good on his threats to harm her family.
M.B. also testified regarding the incident on October 14, 2014, when she called Jazzmine after she saw Washington's car parked outside her school. She told her friend that she was afraid he was at the school looking for her.
Jazzmine corroborated M.B.'s account of that phone conversation and also confirmed that she called S.K. and informed her that Washington sexually abused M.B. Jazzmine said that she later convinced her *1239 to tell the police what Washington had done to her.
M.B.'s younger sister, A.B., testified that when Washington was living with her and her family, she sometimes saw him and M.B. go into the bedroom together while her mother was at work. M.B. wore a big T-shirt, sometimes with nothing underneath. The door was not always locked. She told police she heard sounds coming from the room which she identified at trial as moaning. One particular incident that A.B. recalled was when she walked in the room and saw M.B. lying on the bed with Washington positioned behind her; she said it looked like they were having sex. A.B. quickly shut the door, but told her older sister, C.B., what she had seen. However, Washington denied any wrongdoing and A.B. was punished for going into the room without knocking first. A.B. stated that after the incident she felt like Washington treated M.B. better than her. A.B. testified that he never threatened her then or at any other time.
C.B. testified, as had A.B., that she saw M.B. come out of the bedroom wearing a large white T-shirt and "no bottoms." She recalled A.B. telling her about hearing noises in the room and walking in on M.B. and Washington in a sexually suggestive position. C.B. told her grandmother about the incident. C.B. denied being threatened by the defendant.
Washington's statements were played for the jury during Det. Belle's trial testimony. Detective Belle again denied making any promises or threats regarding the defendant's potential sentencing exposure during his interrogation.
Washington testified at trial, denying that he molested M.B. or threatened her or her sisters. He claimed that he was coerced by Det. Belle into saying that he had sex with M.B. In particular, he asserted that Det. Belle told him that police knew he had committed a prior sex offense and that he should "make it easy on yourself" by confessing. According to Washington, Det. Belle also threatened him by telling him that he would likely receive a 40- to 99-year sentence, but said if he (Washington) told the truth, then he (Det. Belle) would talk to the district attorney and the judge. He maintained that he was under the influence of marijuana when he gave his statements and that he suffers from PTSD.
Sufficiency of Evidence Standard of Review
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied , 09-0725 (La. 12/11/09), 23 So.3d 913.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
*1240 State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 09-0372 (La. 11/6/09), 21 So.3d 299. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette , 43,032 (La. App. 2 Cir. 2/13/08), 975 So.2d 753.
The testimony of the victim alone in a sexual assault case is sufficient to convince a rational factfinder beyond a reasonable doubt of a defendant's guilt. State v. Rives , 407 So.2d 1195 (La. 1981) ; State v. Wade , 39,797 (La. App. 2 Cir. 8/9/05), 908 So.2d 1220. Furthermore, such testimony alone is sufficient, even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Wade, supra .
Louisiana R.S. 14:81.2 defines the crime of molestation of a juvenile as follows:
A. Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.
Before the state may introduce a confession into evidence, it must demonstrate that the statement was free and voluntary and not the product of fear, duress, intimidation, menace, threats, inducements or promises. La. R.S. 15:451 ; La. C. Cr. P. art. 703(D) ; State v. Blank , 04-0204 (La. 4/11/07), 955 So.2d 90. If a statement is a product of custodial interrogation, the state additionally must show that the person was advised before questioning of his right to remain silent; that any statement he makes may be used against him; and, that he has a right to counsel, either retained or appointed. Miranda v. Arizona , supra . When claims of police misconduct are raised, the state must specifically rebut the allegations. State v. Vessell , 450 So.2d 938, 942-943 (La. 1984). A trial court's finding as to the free and voluntary nature of a statement carries great weight and will not be disturbed unless not supported by the evidence. State v. Benoit , 440 So.2d 129, 131 (La. 1983) ; State v. Freeman , 45,127 (La. App. 2 Cir. 4/14/10), 34 So.3d 541, 546, writ denied , 10-1043 (La. 11/24/10), 50 So.3d 827. Credibility determinations lie within the sound discretion of the trial court and its rulings will not be disturbed unless clearly contrary to the evidence. State v. Vessell , supra , at 943. When deciding whether a statement is knowing and voluntary, a court considers the totality of circumstances under which it is made, and any inducement is merely one factor in the analysis. State v. Blank , supra ; State v. Platt , 43,708 (La. App. 2 Cir. 12/3/08), 998 So.2d 864, writ denied , 09-0265 (La. 11/6/09), 21 So.3d 305.
Testimony of the interviewing police officer alone may be sufficient to prove that the statement was given freely and voluntarily. State v. Platt , supra .
Intoxication may render a confession involuntary if it negates a defendant's comprehension and renders him unconscious of the consequences of what he is saying; whether intoxication exists and to a degree sufficient to vitiate voluntariness are questions of fact. However, the mere fact of drug or alcohol intoxication is insufficient, standing alone, to render a confession involuntary. Id.
*1241 In this case, the evidence adduced at trial was sufficient to prove that Washington committed molestation of a juvenile under the age of 13.[9] M.B. testified that when she was 11 years of age, the defendant, her stepfather at the time, had vaginal sexual intercourse with her and touched her vagina on multiple occasions. M.B. explained that she did not tell anyone about the sexual abuse because he threatened to kill or hurt her and her family. M.B.'s sisters, A.B. and C.B., corroborated M.B.'s testimony. Both explained that M.B. would wear a long white T-shirt with no pants and go into a locked bedroom with Washington when their mother was at work. A.B. also recalled hearing "moaning" noises coming from the room where he and M.B. were alone together, and once walked in and saw what she believed to be Washington having sex with M.B; he immediately yelled at A.B. to leave the room. S.K. and Washington confirmed that he was around 28 years old when he married S.K. and that he babysat M.B. and A.B. when S.K. was working. The jury's unanimous decision to accept M.B.'s testimony as truthful, and reject the defendant's self-serving testimony, is entitled to great deference.
Washington's claim that his confession was not knowing or voluntary is likewise unavailing. Detective Belle testified at the motion to suppress hearing, and at trial, that the defendant was advised of, and waived his Miranda rights prior to making both statements - a fact verified by the audio recording of both interviews. Additionally, Det. Belle testified that Washington was not threatened, coerced, or promised anything in exchange for his confession, and that he did not appear to be under the influence of any intoxicating substances. Furthermore, although Washington claims he was under the influence of marijuana at the time of his statements, the audio recording of the statements indicates that he was oriented as to the time and place, and understood the questions asked of him; he admitted wrongdoing, but attempted to minimize his culpability by blaming the victim for initiating the sexual contact.
Accordingly, this assignment of error lacks merit.
Excessive Sentence
By his second assignment of error, Washington argues that the trial court imposed an unconstitutionally harsh and excessive sentence. His 60-year sentence is excessive, he maintains, considering that he is a first offender and military veteran.
The state responds that the midrange sentence is not excessive given the victim's youthful age, and considering that Washington could have been charged with aggravated rape.
We note that the court did not order a presentence investigation ("PSI") in this very disturbing case. A PSI detailing the defendant's background would have been helpful given the seriousness of the offense and severity of the sentencing range. The court held a sentencing hearing on June 29, 2016, at which Washington argued that his status as a first-felony offender and his service in the U.S. Army militates against a lengthy prison sentence, while the state requested a midrange sentence of 62 years.
The trial court noted that it reviewed the presentencing statements submitted by Washington, as well as the arguments made by the defense and the state at the sentencing hearing. The trial court also said it had reviewed the sentencing factors *1242 provided in La. C. Cr. P. art. 894.1, and found the following factors to be particularly relevant: (1) the victim's youthful age; (2) the age of the defendant; (3) the familial relationship between the victim and defendant; (4) the fact that the defendant ultimately became the victim's stepfather; (5) the fact that the defendant had firearms in the house; and (6) a lesser sentence would deprecate the seriousness of the offense. Based on these facts, the trial court sentenced Washington to 60 years at hard labor, with the first 25 years to be served without the benefit of probation, parole or suspension of sentence, and advised him of his obligation to register as a sexual offender. As noted, Washington's motion to reconsider was denied.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the trial court complied with La. C. Cr. P. art. 894.1. The trial court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall , 94-0461 (La. 9/5/95), 660 So.2d 819. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato , 603 So.2d 739 (La. 1992). No sentencing factor is accorded greater weight by statute than any other factor. State v. Taves , 03-0518 (La. 12/3/03), 861 So.2d 144.
The second prong is constitutional excessiveness. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman , 99-1753 (La. 5/16/00), 769 So.2d 1158.
The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7. The issue is not whether some other sentence might have been more appropriate, but whether the district court abused its discretion. Id . ; State v. Presentine , 51,241 (La. App. 2 Cir. 4/5/17), 217 So.3d 590.
Molestation of a juvenile under the age of 13 is punishable by imprisonment at hard labor for not less than 25 years, nor more than 99 years; at least 25 years of the sentence imposed shall be served without the benefit of probation, parole or suspension of sentence. La. R.S. 14:81.2.
The record indicates that the trial court complied with Art. 894.1. The trial court noted its review of the statutory sentencing guidelines, and found several to be particularly relevant, including both the victim's and the defendant's age and their familial relation. Although the court did not specifically note Washington's status as a first-felony offender or a veteran when imposing his sentence, both facts were contained in Washington's presentencing statement, which the trial court explained that it considered prior to the hearing. The sentence imposed is not constitutionally excessive. As noted by the trial court, M.B.'s youthful age and the parental position of trust held by Washington at the time of the molestation are particularly disturbing; the defendant's actions will undoubtedly haunt M.B. for the remainder of her life. Despite being a first-felony conviction, the crime perpetrated was particularly heinous.
Although we would have preferred to have the benefit of a PSI detailing Washington's background, we conclude that the *1243 trial court acted within its great discretion and the midrange sentence imposed does not shock the sense of justice.
Accordingly, this assignment of error lacks merit.
Pro Se Assignment of Error
By pro se assignment of error, Washington alleges that there was insufficient evidence to convict, especially considering the erroneous jury instruction given by the trial court. He filed a pro se brief arguing that the evidence was insufficient to convict him, as M.B's testimony is not credible and he denied at trial that he touched M.B. inappropriately. Washington also argues that the trial court erred in instructing the jury regarding the elements of the offense of molestation of a juvenile.
After the trial court charged the jury, the state and the defense agreed to add a paragraph to the instructions, which the trial court read aloud to the jury:
The accused, Tyrone Washington, stands before you charged with molestation of a juvenile, to wit, M.B., date of birth January 30, 1998, by anyone over the age of 17, of any lewd or lascivious act upon the person, or in the presence of any child under the age of 17, there being an age difference of greater than two years between the person, with the intention of arousing and gratifying the sexual desires of either person by the use of force, violence, duress, menace, psychological intimidation, threat and great bodily harm, and by the use of influence by virtue of a position of control and supervision over the juvenile on or about January 1, 2009, through December 3, 2010.
As noted, La. R.S. 14:81.2 provides, in pertinent part:
A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
(Emphasis added.)
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury. La. C. Cr. P. art. 801(C).
As discussed above, the evidence adduced at trial was sufficient to prove that Washington committed the offense of molestation of a juvenile.
The defense did not object to the subject jury instruction, and in fact agreed that it needed to be given to the jury. Furthermore, although the subject jury instruction is a misstatement of the law, the error inured to the defendant's advantage. La. R.S. 14:81.2 requires the state to prove that a defendant committed the molestation of a juvenile by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. The subject instruction required the state to prove both that the use of force, violence, duress, menace, psychological intimidation, threat and great bodily harm, and the use of influence by virtue of a position of control and supervision over M.B.
*1244 Accordingly, this assignment of error lacks merit.
CONCLUSION
We therefore conclude for the reasons stated above that the trial court did not err by admitting Washington's confession into evidence; that the evidence at trial was sufficient to convict him for the offense of molestation of a juvenile; and, that the 60-year sentence imposed is not excessive. Accordingly, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

The defendant was advised of his obligation to register as a sexual offender and the time limitations for applying for post-conviction relief.

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The recorded interview was admitted into evidence at the motion to suppress hearing as State's Ex. 1; the recorded interview was admitted into evidence at the defendant's trial as State's Ex. 5.

Washington signed a written waiver of his Miranda rights which was admitted into evidence at the motion to suppress hearing as State's Ex. 2.

The portion of the recording referencing the possible commission of a previous sex offense was redacted from the recording played at trial, as Washington's military records confirmed that he was not the same Tyrone Washington suspected of committing a prior sex offense.

S.K. testified that Washington's date of birth is July 29, 1980.

Formerly the Silver Pines Apartments.

M.B. testified that her date of birth is January 30, 1998.

The defendant's claim that the evidence was insufficient to convict him is addressed first. See State v. Hearold , 603 So.2d 731 (La. 1992) ; State v. Cortez , 48,319 (La. App. 2 Cir. 8/7/13), 122 So.3d 588.