Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,163-KW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| STATE OF LOUISIANA | Plaintiff-Respondent |
|---|---|

versus

| LABARRIE D. WATSON | Defendant-Applicant |
|---|---|

* * * * *

On Application for Writs from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 392,379

Honorable Ramona L. Emanuel, Judge

* * * * *

| OFFICES OF J. RANSDELL KEENE<br>By: Joseph Ransdell Keene | Counsel for<br>Defendant-Applicant |
|---|---|
| LABARRIE D. WATSON | Pro Se<br>Defendant-Applicant |
| JAMES E. STEWART, SR.<br>District Attorney | Counsel for<br>Plaintiff-Respondent |
| FERNANDO BERNARD GRIDER, JR.<br>Assistant District Attorney | |

* * * * *

Before COX, ROBINSON, and HUNTER, JJ.

**HUNTER, J.**

The defendant, LaBarrie D. Watson, was charged by bill of information with possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1. The trial court denied the defendant's motions to suppress, and this Court granted the defendant's writ application to review the correctness of the court's ruling. For the following reasons, we reverse the trial court's ruling denying the motions to suppress, and we remand for further proceedings consistent with this opinion.

## FACTS

On August 10, 2022,[1] police officers with the Shreveport Police Department Violent Crimes Abatement team, Lt. Steve McKenna, Detective Bassett, and Detective Donald Henry, were patrolling the 2500 block of Darien Street in Shreveport, Louisiana. The officers were searching for a male known as "TT," who had allegedly been riding through the area on a bicycle threatening others with a firearm.

As the officers were traveling on Darien Street, they observed a brown Cadillac turn into a driveway without utilizing a turn signal; the officers executed a traffic stop. The officers exited their vehicle and approached the Cadillac, which was driven by a woman who identified herself as "Cherrel."[2] When asked for her identification, Cherrel was unable to provide her driver's license. She told the officers the Cadillac belonged to her husband

---

[1] The bill of information states the offense occurred August 10, 2022. However, during the hearing on the motion to suppress, Lt. McKenna stated the incident occurred on July 30, 2022.

[2] The transcript contains inconsistencies in the spelling of the woman's name. In some portions of the transcript, it is spelled "Cherrel" and in others, it is spelled "Cherelle." Since the spelling "Cherrel" is used more frequently in the transcript, she will be referred to herein as "Cherrel."

and pointed at the defendant, LaBarrie Watson, who was closing the door of a silver rental car parked in a vacant lot several yards away.

Lt. McKenna testified Detectives Henry and Bassett approached the defendant and asked him if he knew TT. The defendant denied knowing anyone named TT and walked away. Lt. McKenna also testified that he became suspicious about the defendant because, in his "officer experience" of more than 17 years in narcotics investigation, a husband failing to check on his wife during a traffic stop outside their house was "very, very odd." Lt. McKenna stated he witnessed the defendant entering one of the houses west of the vacant lot, and there had been "problems in the past" in the area caused by individuals "drinking and selling illegal narcotics" in vacant lots.

Before he spoke to defendant, Lt. McKenna approached the silver rental car multiple times, peering inside "to make sure it was not stolen," and to "see in the plain view if [he] could see anything." The first time Lt. McKenna approached the rental car, he tested the driver's side door and discovered the vehicle was unlocked. However, he testified he did not recall if he "physically entered" the rental car. Lt. McKenna asked the defendant for consent to search the silver vehicle.

The defendant exited the house and walked to where Lt. McKenna was standing on the sidewalk. The video footage from the officers' body cameras reveals their concerns about the gun-wielding TT quickly dissipated, and their focus became directed at the defendant.[3] Officer McKenna asked the defendant for consent to search the Cadillac, and he

---

[3] The defendant told the officers where TT lived. The footage from one of the officers' body cameras showed a man on a bicycle riding past the officers while they were focused on the defendant.

consented. The officers searched the Cadillac but "nothing of interest" was found. The video footage from one of the officers' body cameras showed Lt. McKenna asking the defendant for consent to search the rental car. The defendant refused to consent to the search, telling the officer he could not consent to the search of the silver vehicle because it did not belong to him.

Subsequently, the officers ran the license plate on the rental car and discovered the vehicle had been rented by Lakeisha Taylor. The officers also learned the defendant was using the rental car with Taylor's permission.

Lt. McKenna testified as he was peering inside the silver car, he noticed a plate that "appeared to [have] some type of white residue on" it. The plate was subsequently seized and examined by the crime lab; however, it was later discarded because the lab did not find any residue on it.[4] Lt. McKenna testified he did not stop and apply for a warrant to search the rental car at this point. He admitted he could have applied for a warrant electronically, the incident occurred in the middle of the day (approximately 2:00 p.m.), and he had time to apply for a warrant. However, the officer stated he did not apply for a warrant because he "can get consent," and he was "curious about where [defendant] was at."

Additionally, Lt. McKenna testified when defendant came over to talk to him, he advised him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and they walked to the rental car.[5] According to Lt. McKenna, after being advised of his rights,

---

[4] Lt. McKenna testified the defendant told him the residue on the plate "was the dope that [his wife] was smoking and using earlier."

[5] At the July hearing Lt. McKenna testified he and defendant were walking to the rental car. However, at the August hearing, he testified they were going to the police unit.

defendant began "freely talking" and admitted he was currently on parole.[6]

When asked by defense counsel whether the *Miranda* rights were warranted because the defendant was a target or subject of an investigation, Lt. McKenna testified as follows: (1) he believed it was "very, very odd" that defendant did not check on his wife; (2) defendant could have gone into the house and "hid" something; (3) he had "a feeling" the perceived white substance on the plate in the rental car was cocaine; and (4) "there could've been something in that vehicle that was criminal."

Lt. McKenna testified he believed the defendant was being untruthful when answering questions, so he directed the defendant to a nearby shade tree. At this point, Lt. McKenna deactivated his body camera but continued to converse with the defendant. During the hearing, he testified he turned the camera off because he was attempting "to get [the defendant] to flip" and become a confidential informant ("CI").[7] When questioned further about why he deactivated his body camera, Lt. McKenna testified as follows:

> So a lot of times what I'll do is I'll shut that – shut that mic down. So if we're trying to work a deal out to the point that I didn't want everybody knowing, the Court, or if we had jurors, excuse me, or a lot of bystanders knowing that he was trying to help the police out and help himself out. I didn't want everybody knowing that he was trying to be a confidential informant and possibly could get hurt later down the road. That was my plan. So I talked to him to say, hey, this is what I can do. This is what you can do. And see if we can work together and try to minimize some of the shootings around the Queensboro area.

---

[6]At the July hearing, Lt. McKenna stated defendant told him he was on parole after being read his rights; however, at the August hearing Lt. McKenna testified he was uncertain whether he was told defendant was on parole.

[7] Det. Henry's body camera captured portions of the conversation between Lt. McKenna and the defendant.

Upon further questioning regarding deactivating his body camera, Lt. McKenna responded:

> I turned it off because a lot of times I try to keep, just in case I do not have to be – or just in case I do have to arrest the defendant if they don't – if they don't come out to their agreement or something changes. I don't like for the Court, meaning bystanders, other defendants, knowing that [defendant] was helping the police or considered to help the police.

Lt. McKenna was then asked whether the defendant's consent to search the rental car was subject to a promise or agreement made by him, and he replied as follows:

> I don't recall making a promise. I do recall that we could possibly work something out. The 17 years that I've worked in the office of special investigations, we never promise something; however, I do recall trying to, what we call it flip, flip [defendant] to be a confidential informant.

Subsequently, at the hearing conducted on August 29, 2024, after the body camera footage was played, Lt. McKenna was asked if he told the defendant he would not arrest him if he provided information. Lt. McKenna replied:

> I explained to him that if we work together and you provide information, because he is on parole, and we cannot put him in a criminal element that they would – that we would hold those charges and that, hey, you work for us, we would help you out. And then he wouldn't be arrested for the firearm charges.

When asked more straightforwardly if the agreement was the defendant would not be arrested for the firearm charge, Lt. McKenna stated, "That is correct."

After the agreement was reached, Lt. McKenna testified the defendant consented to the search of the rental vehicle. Prior to searching the vehicle, Lt. McKenna asked the defendant what would be found in the rental car. The defendant informed the officer a firearm was inside the rental car, but

Taylor was the owner of the weapon. At Lt. McKenna's request, the defendant agreed to retrieve the firearm from the closed center console of the rental car.

Defendant was not arrested that day. Rather, Lt. McKenna wrote his phone number on the back of a business card and gave it to the defendant for further communication. Lt. McKenna also provided defendant with a "cover story" to provide the "neighborhood" with an explanation as to why he was not arrested.[8]

On August 24, 2022 (14 days after the encounter), Lt. McKenna obtained a warrant for defendant's arrest. Approximately three months later, on November 15, 2022, defendant was called to the probation and parole office for a prearranged interview. After the defendant was interviewed about the firearm, Lt. McKenna placed him under arrest for possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1.

During the hearing on the motion to suppress, Lt. McKenna was asked why he broke the agreement not to arrest the defendant. He stated that he was "not fully informed" when he made the agreement, and "new information" had come to light after the agreement was made, *i.e.*, the handgun had been used in a prior violent crime, which was wholly unrelated to the defendant.

On January 31, 2023, the defendant filed a pro se "Motion to Suppress Inculpatory Statements and Physical Evidence"; the motion was later

---

[8] The firearm was hidden in a bag to avoid onlookers from becoming suspicions as to why the defendant was not taken into custody. Apparently, the defendant was well known in the area, and Lt. McKenna was concerned that neighbors might wonder why he was not arrested after a firearm was found in the rental car.

adopted by counsel. The defendant argued, *inter alia*, "McKenna had no probable cause to enter his yard and go looking into the vehicle parked on [defendant's] property," without a search warrant or an arrest warrant for the defendant or anyone else on the property. On February 14, 2023, the defendant filed a supplemental motion to suppress, arguing "any inculpatory statements, and physical evidence should be suppressed as they were obtained as a result of McKinna's [*sic*] 'influence and promise' not to take [defendant] to jail," and were "tainted by McKinna's [*sic*] coercion, and promises not to take [defendant] to jail for the gun if one was found in the vehicle."

Hearings on the motions to suppress were held over the course of two days: July 16, 2024, and August 29, 2024. During the hearing, although the State had the burden of proving the admissibility of any evidence seized without a warrant, the State deferred to defense counsel to present evidence. Defense counsel noted for the record that this was not the normal course of proceedings for a hearing on a motion to suppress. Nevertheless, counsel presented the evidence, and the State responded accordingly. At the conclusion of the August hearing, the trial court denied both motions, stating "This Court does not find that the motion is supported by law or evidence. Motion is denied."

The defendant filed an application for supervisory review. By order dated November 20, 2024, this Court granted the writ to docket.

**DISCUSSION**

The defendant contends the trial court erred in denying the motions to suppress. He argues Lt. McKenna took him aside, deactivated his body camera, and induced the defendant to give permission to search the rented

7

vehicle. The defendant also argues Lt. McKenna obtained permission to search the rental car by promising him he would not be arrested, and during the suppression hearing, Lt. McKenna admitted to making the inducement and agreement. However, two weeks afterward, Lt. McKenna breached the agreement and obtained a warrant for the defendant's arrest for possession of the firearm.

In response, the State argues La. C. Cr. P. art. 215.1 allows a law enforcement officer to stop a person in a public place if he or she reasonably suspects the person is committing, has committed, or is about to commit a criminal offense. The officer may demand the person's name, address, and an explanation of his actions and may temporarily detain and interrogate them. *See*, *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Taylor*, 363 So. 2d 699 (La. 1978). The State also argues Lt. McKenna "had reasonable suspicion or cause to initiate contact" with defendant, based on the officer's "experience, training, and common sense." The State concedes that Lt. McKenna promised not to arrest the defendant because he wanted to use him as a CI. Nevertheless, the State asserts the defendant's statements regarding the gun came after he was advised of his *Miranda* rights, and he did not invoke his right to remain silent.

The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the 1974 Louisiana Constitution. A search and seizure conducted without a warrant issued on probable cause is unreasonable unless the warrantless search can be justified by one of the narrowly drawn exceptions to the warrant requirement. *State v. Thompson*, 02-0333 (La. 4/9/03), 842 So. 2d

8

330; *State v. Hunter*, 46,194 (La. App. 2 Cir. 4/13/11), 62 So. 3d 340, *writ denied*, 11-0889 (La. 11/4/11), 75 So. 3d 921.  On the trial of a motion to suppress filed under La. C. Cr. P. art. 703, the burden of proof is on the defendant to prove the grounds of his motion.  However, the State bears the burden of proving the admissibility of any evidence seized without a warrant.  La. C. Cr. P. art. 703(D); *State v. Hunter*, *supra*.

Violating a traffic regulation provides reasonable suspicion to stop a vehicle. *State v. Hunter*, *supra*.  If a police officer observes a traffic infraction, then the subsequent stop for that offense is clearly legal. *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *State v. Hunter*, *supra*. The subjective intent of the officer making the traffic stop is irrelevant, as long as he observed the traffic violation. *Whren*, *supra*.

When a police officer makes a lawful arrest of an individual, that officer is authorized, without more, to search the arrestee and his wingspan, or lunge space, for weapons and evidence. *State v. Hunter*, *supra*; *State v. Stoutes*, 43,181 (La. App. 2 Cir. 4/2/08), 980 So. 2d 230. If a lawful arrest is made of the occupant of a vehicle, then law enforcement is permitted to search the entire passenger compartment when it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Thornton v. United States*, 541 U.S. 615, 124 S. Ct. 2127, 158 L. Ed. 2d 905 (2004).

When deciding whether a statement is knowing and voluntary, a court considers the totality of the circumstances under which it is made, and any inducement is merely one factor in the analysis. *State v. Blank*, 04-0204 (La. 4/11/07), 955 So. 2d 90, *cert. denied*, 552 U.S. 994, 128 S. Ct. 494, 169 L. Ed. 2d 346; *State v. Platt*, 43,708 (La. App. 2 Cir. 12/3/08), 998 So. 2d 864, *writ denied*, 09-0265 (La. 11/6/09), 21 So. 3d 305.  Promises of immunity

9

from prosecution, clemency, or leniency, inducements and implied promises will void a defendant's statement. *See*, *State v. Jackson*, 414 So. 2d 310 (La. 1982); *State v. Platt*, *supra*; *State v. English*, 582 So. 2d 1358 (La. App. 2 Cir. 1991), *writ denied*, 584 So. 2d 1172 (La. 1991).

In *State v. Alexander*, 18-1772 (La. 12/3/18), 257 So. 3d 672, the defendant made a statement after a detective assured him that anything he said would "remain in the interrogation room" and that no one would need to know what he told the detective. In a per curiam opinion, the Louisiana Supreme Court vacated the trial court's ruling denying defendant's motion to suppress. The Court stated:

> The district court erred in denying defendant's motion to suppress his statement. Defendant made his statement after a detective assured him anything he said would stay in the interrogation room and that no one would need to know what he told the detective. The detective's assurance amounted to a false promise of confidentiality that subverted the *Miranda* warning that anything defendant said will be used against him in a court of law, and thus rendered defendant's statement involuntary. *See Hopkins v. Cockrell*, 325 F.3d 579, 584-585 (5th Cir. 2003) ("An officer cannot read the defendant his *Miranda* warnings and then turn around and tell him that despite those warnings, what the defendant tells the officer will be confidential and still use the resultant confession against the defendant.").

In the instant case, after Lt. McKenna advised the defendant of his *Miranda* rights, he promised the defendant he would not be arrested in exchange for providing information. The officer's promise came after the defendant had refused to consent to the search of the rental car several times. We have reviewed the body camera footage introduced into evidence, and the defendant was clearly depicted granting consent to search *his* vehicle (the Cadillac involved in the traffic stop). The defendant could also be heard stating he could not, and he would not give consent to search the rental

vehicle. When Lt. McKenna continued to ask the defendant about the rental vehicle, the defendant told him he was not exiting the vehicle at that time; he was merely retrieving his crutches from the car. Further, prior to searching the vehicle, Lt. McKenna asked the defendant what would be found in the car, and the defendant stated a firearm was in the vehicle, and at the officer's directive, the defendant retrieved the gun from the console of the car.

After carefully reviewing the record, we find that like in *State v. Alexander*, *supra*, Lt. McKenna's assurance that the defendant would not be arrested "amounted to a false promise of confidentiality that subverted the *Miranda* warning that anything defendant said will be used against him in a court of law and thus rendered defendant's statement involuntary."

Furthermore, the defendant was not the person who committed the traffic violation, and he was not a passenger in the stopped vehicle. He was seen near a rented vehicle parked in a vacant lot several yards away from the location of the traffic stop. Neither the defendant, nor the rental car, was involved in the traffic stop, and the officers' interest in the defendant and the rented vehicle did not amount to reasonable suspicion or probable cause to question the defendant or search the rental car. Accordingly, we grant the defendant's application for supervisory writs, reverse the judgment of the trial court denying the motion to suppress, and remand the matter to the trial court for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons set forth herein, the writ is granted, the judgment of the trial court denying the motion to suppress is reversed, and the matter is remanded to the trial court.

**WRIT GRANTED; JUDGMENT REVERSED; REMANDED.**

11